**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00192-CV**
_____

**IRELAND FAMILY LIMITED PARTNERSHIP, Appellant**

**V.**

**BRENT SOLOWAY AND ANNA LIU, Appellees**

**On Appeal from the 457th District Court**
**Montgomery County, Texas**
**Trial Cause No. 22-03-03970-CV**

**MEMORANDUM OPINION**

In this accelerated interlocutory appeal Appellant Ireland Family Limited Partnership ("Ireland") appeals the trial court's order denying its motion to dismiss claims filed by Appellees Brent Soloway and Anna Liu. Ireland filed its motion to dismiss pursuant to the Texas Citizen's Participation Act ("TCPA"). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–27.011, 51.014(a)(12) (authorizing interlocutory appeal for an order denying motion to dismiss filed under TCPA

1

section 27.003). We reverse the trial court's Order on Defendants' TCPA Motion and remand for proceedings consistent with this opinion.

BACKGROUND

The underlying dispute arises out of a purchase of real property between Appellees and Ireland. After the parties entered into a Residential Condominium Contract (RESALE) ("the Contract") for the purchase of a condominium unit ("the Property"), Ireland filed an Original Petition against Covenant Clearinghouse, LLC ("Covenant"), alleging causes of action for suit to quiet title to the Property and declaratory relief. Ireland alleged that in 2007, Blaketree, L.P. ("Blaketree") acquired a large property in Montgomery County ("the Montgomery County Property"), and in 2009, Blaketree entered into a Declaration of Covenant ("the Declaration"), which was recorded in Montgomery County, Texas. In 2011, a Notice of Transfer Fee Obligation was filed pursuant to section 5.203 of the Texas Property Code, which pertained to any property that was part of the Montgomery County Property and stated that the payee under the Declaration was Covenant. *See* Tex. Prop. Code Ann. § 5.203. The Notice of Transfer Fee alleged that all owners of property that was once part of the Montgomery County Property owed transfer fees and other charges every time a property is sold between August 20, 2009, and December 31, 2110. The Notice of Transfer Fee was recorded in the Montgomery County Recorder's Office.

2

After the Declaration was recorded, the Montgomery County Property was subdivided into hundreds of smaller properties, which are affected by the Notice of Transfer Fee. In 2015, Covenant filed a Notice of Private Transfer Fee for any property that was part of the Montgomery County Property, and in 2021, Covenant filed a Notice of Assessment, which stated that failing to satisfy assessments may result in a senior claim against the property and violate lender closing instructions. In its Original Petition against Covenant, Ireland alleged that it owns properties that were part of the Montgomery County Property and that are affected by the Declaration, Notice of Transfer Fee, Notice of Private Transfer Fee, and Notice of Assessment, and one of those properties is the Property subject to the Contract between Appellees and Ireland. Ireland alleged that the Declaration, Notice of Transfer Fee, Notice of Private Transfer Fee, and Notice of Assessment are either void, voidable, illegal, or unenforceable and that its equitable action was appropriate to remove a cloud from the title of its properties. Ireland requested that the trial court confirm that the Declaration, Notice of Transfer Fee, Notice of Private Transfer Fee, and Notice of Assessment are either void, voidable, illegal, or unenforceable. On March 24, 2022, Ireland filed a Notice of Lis Pendens of Real Property owned by Ireland in Montgomery County, Texas, which included the Property subject to the Contract between Appellees and Ireland, and the Notice stated that the purpose of

the civil action was to, among other things, obtain a determination and ruling from the court on the legality of the documents and their charges.

On March 30, 2022, Appellees filed an Original Petition against Ireland for breach of contract and filing a fraudulent claim against real property, alleging that Ireland breached the Contract by creating a fictitious dispute related to the payment of transfer fees as a condition to issuance of title insurance to avoid its contractual obligation to close on the sale by March 25, 2022, and by recording a Notice of Lis Pendens. Appellees alleged that Old Republic National Title Insurance Company ("Old Republic") committed to issuing title insurance to Appellees upon receipt of payment and compliance with the requirements in Schedule C, which did not include the payment of transfer fees as a condition to issuance of title insurance. However, due to Ireland's actions, Old Republic issued a revised Commitment for title insurance requiring the satisfactory disposition of Ireland's lawsuit against Covenant and the release of the Lis Pendens. Appellees sought specific performance under the Contract, damages, and attorney's fees. Appellees also requested that the trial court expunge the Lis Pendens that Ireland recorded against the Property.

On April 8, 2022, Ireland filed a Motion to Dismiss Pursuant to the TCPA, arguing the Appellees' lawsuit is clearly intended to restrict its exercise of its right to petition. Ireland argued that it filed a lawsuit against Covenant to challenge the validity of the transfer-fee lien and the Lis Pendens against the Property because it

believed there were title objections under the Contract, and Appellees filed suit when Ireland declined to dismiss the lawsuit and Lis Pendens. Ireland argued that Appellees' suit, which alleged that it breached the Contract and filed a fraudulent lien, was based on and in response to Ireland's exercise of its right to petition and that Appellees had the burden to establish a prima facie case as to each element of their claims to avoid dismissal under the TCPA. Ireland also argued that since it established the affirmative defense of privilege, the TCPA requires the trial court to dismiss Appellees' claims. Ireland sought sanctions and to recover its attorney's fees.

On April 11, 2022, Appellees filed a First Amended Petition, arguing that on February 17, 2022, Old Republic had committed to issuing title insurance to Appellees upon payment and compliance with the requirements in Schedule C, and there were no requirements to pay transfer fees. Appellees alleged that Ireland created a fictitious dispute regarding the payment of transfer fees by filing a lawsuit against Covenant, which caused Old Republic to issue a revised Commitment for Title Insurance which contained a Schedule C requirement that the lawsuit be satisfactorily disposed, the Lis Pendens released, and any transfer fees paid. Appellees alleged that they offered to pay transfer fees if assessed, but Ireland refused their request to release the Property from the lawsuit and Lis Pendens so the closing could proceed. Appellees also alleged that when they objected to the

5

Schedule C requirements and requested that Ireland cure the defect, exception, and/or encumbrance to title, Ireland stated it was not required to cure. Appellees alleged that they were ready to close on the Property when Ireland signed and recorded the Lis Pendens with intent to cause them financial injury, and Ireland breached the Contract by refusing to close.

On April 22, 2022, Appellees filed a Second Amended Petition, alleging that Bluejack National Condominium, the condominium regime the Property was located in, and three other title companies had determined the transfer fee claim was void, and those title companies were willing to underwrite a title policy for the Property without taking exception to the transfer fee encumbrance. Appellees alleged there was nothing preventing Ireland from fulfilling its contractual requirements to close by March 25, 2022, furnish title insurance, and convey title to the Property with no additional exceptions than those permitted in Paragraph 6 of the Contract. Appellees alleged that they could have timely closed with another title company, but Ireland refused to cooperate and filed a lawsuit and recorded a Notice of Lis Pendens. Appellees stated that after Ireland learned a comparable property sold for a higher price, on March 15, 2022, Ireland notified them and Riverway Title that it was unable to move forward with the sale because there was a title matter that affected the Property. Appellees alleged that when they reached out to another title company for assistance, Ireland refused to cooperate.

6

Appellees explained that Ireland filed suit even though Bluejack National Condominium and other title companies had already determined the instruments to be invalid and of no affect upon title to the Property. Appellees further explained that at Ireland's request, Old Republic issued a revised Commitment for Title Insurance on March 23, 2022 ("March 23 Commitment"), which required Ireland to dismiss its lawsuit without prejudice as a condition of issuing title insurance to Appellees. Appellees alleged that after they complained that the condition to issuance of title was improper since no lis pendens had been recorded, Ireland filed a Notice of Lis Pendens against its own Property. Appellees explained that Old Republic revised the Commitment for Title Insurance again on March 24, 2022 ("March 24 Commitment"), including under Schedule C's requirements the satisfactory disposition of Ireland's lawsuit and release of the Lis Pendens, as well as payment of any transfer fees. Appellees objected to those Schedule C requirements and demanded that Ireland cure the defect, exception, and/or encumbrance to title, but Ireland refused. Appellees alleged they signed all closing documents and tendered payment to Riverway Title and that Ireland objected to the Lis Pendens and settlement statement. According to Appellees, Ireland breached the Contract by failing to: furnish title insurance as required by the Contract; execute and deliver a general warranty deed conveying title to the Property which showed no additional exceptions than those permitted in Contract; and close on the sale.

7

Appellees filed a Response to Ireland's Motion to Dismiss pursuant to the TCPA, arguing that Ireland attempted to shield itself from liability using the TCPA under the guise that it was pursuing its constitutional right to petition by filing the lawsuit and Lis Pendens against its own Property. Appellees argued that this case is about a seller breaching a contract to timely close and about that seller's intentional efforts to cloud title to its own Property that is subject to the Contract. Appellees maintained that their evidence showed Ireland manipulated the TCPA, and despite its rush to file the lawsuit prior to the closing date, Ireland had not requested issuance of citation upon or effectuated service upon Covenant. Appellees evidence includes: the Affidavit of Ann Liu; the Contract; February 17, 2022 Commitment for Title Insurance; March 23 Commitment; March 24 Commitment; email from Black National Condominium; email regarding no Lis Pendens; Objection; Ireland's lawsuit against Covenant with attached Notice of Assessment, 2015 Notice of Private Transfer Fee, 2011 Notice of Transfer Fee, 2009 Declaration of Covenant; Lis Pendens; Affidavit of Misty Gasiorowski concerning attorney's fees; and emails from Gasiorowski.

The parties' Contract provided that Ireland shall furnish Appellees a title policy issued by Riverway Title subject to nine specified exceptions, which are not subject to objection. The exceptions listed under Paragraph 6A include the following:

(1) Restrictive covenants common to the platted subdivision in which the Property is located.

8

(2) The standard printed exception for standby fees, taxes, and assessments.

(3) Liens created as part of the financing described in Paragraph 3.

(4) Terms and provisions of the Documents including the assessments and platted easements.

(5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.

(6) The standard printed exceptions as to marital rights.

(7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.

(8) The standard printed exceptions as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements.

(9) The exception or exclusion regarding minerals approved by the Texas Department of Insurance.

The Contract also required Ireland to notify the Appellees if the Property is subject to a transfer fee obligation. At closing, the Contract provided that Ireland shall execute and deliver a general warranty deed conveying title to the Property to Appellees showing no additional exceptions to those permitted in Paragraph 6.

The Schedule C requirements in the March 24 Commitment:

Your Policy will not cover loss, costs, attorneys' fees, and expenses resulting from the following requirements that will appear as Exceptions in Schedule B of the Policy, unless you dispose of these matters to our satisfaction, before the date the Policy is issued:

. . .

11. Notice of Lis Pendens stated March 24, 2022, filed for record in the office of the County Clerk of Montgomery County, Texas, on March 24, 2022, under Clerk's file No. 2022036995, in connection with a pending action in the 284th Judicial Court of Montgomery County, Texas under Cause No. 22-03-03697, styled IRELAND FAMILY LIMITED PARTNERSHIP vs. COVENANT CLEARINHOUSE, LLC, involving the herein

9

described property. We require satisfactory disposition of said Suit and the Notice of Lis Pendens must be released of record.

12. We require the payment of Transfer fees, if any, as set out under County Clerk's File No. 2009076172 and 2021116010, and any amendments thereto, recorded in the Official Public Records of Montgomery County, Texas.

In her affidavit, Liu stated that she and her husband, Brent Soloway, contracted to purchase the Property from Ireland, and the title work showed that in 2021, Covenant filed a Notice of Assessment, which stated the Property may be subject to a transfer fee and that if unpaid it could result in a senior claim against the Property and violate lending closing instructions. Liu stated that to her knowledge a transfer had not been assessed against the Property, and there was no violation of lending closing instructions. Liu explained that three title companies agreed to underwrite title policies for the Property without taking exception to the transfer fee encumbrance, and she was unaware of any legal impediments related to the transfer fee that would have prevented Ireland from fulfilling its obligations under the Contract. Liu further explained that after Ireland filed its lawsuit and Notice of Lis Pendens, Old Republic revised its Commitments for Title requiring the satisfactory disposition of the lawsuit and Lis Pendens and payment of any transfer fees as a condition of issuance of title insurance.

Liu averred that Ireland refused to release the Property from the lawsuit and Lis Pendens and proceed as owner of another property and allow her and Brent to

10

pay any transfer fee if assessed. Liu stated that she and Brent were able to close on the Property on March 25, 2022, and they signed all closing documents and tendered payment, but Ireland objected to the Lis Pendens and settlement statement. Liu explained that due to Ireland's effort to get out of the Contract, she and Brent suffered damages, including attorney's fees and court costs.

Ireland filed a Reply in Support of its Motion to Dismiss Pursuant to the TCPA, arguing that the TCPA applies to Appellees' fraudulent lien claim because it is based on its filing of the Lis Pendens which constitutes the right to petition. Ireland argued that the initial threshold inquiry under the TCPA is whether it applies and does not hinge on whether a party exercised its constitutional rights in an allegedly rightful or wrongful manner. Ireland argued that its filing of the Lis Pendens constituted an exercise of its right to petition regardless of Appellees' allegations that it did so with an improper motive. Ireland further argued that Appellees failed to meet their burden to establish a prima facie case as to each element of their fraudulent lien claim and that it established its affirmative defense of the judicial proceedings privilege as a matter of law. Ireland disputed Appellees' contention that parties are only absolutely privileged to file lis pendens against properties they did not own, and Ireland argued that no Texas Court had ever made that distinction.

Regarding Appellees' amended breach of contract claim, Ireland argued that it is based on its filing of the lawsuit and Lis Pendens, and Appellees failed to submit

11

any evidence showing Ireland breached the Contract, which only allows certain title exceptions under paragraph 6A, by filing its lawsuit and Lis Pendens to create non-permissible title exceptions on the title commitment. Ireland argued that the Contract provided that if the title commitment contains additional exceptions not permitted under Paragraph 6A, Paragraph 6B specifies that: (1) Appellees must object to the particular exception; (2) Ireland is permitted to cure the objection; (3) if Ireland refuses to cure, Appellees can either waive the objection and proceed with closing or terminate the Contract; and (4) if Appellees decline to do either, then they will have been considered to have waived all objections and proceed to closing. Ireland claimed it was not obligated to cure the objections, and since it refused to cure, the Contract only allowed Appellees to terminate the Contract or waive the objections and did not allow Appellees to sue for breach of contract. Ireland requested the trial court grant its TCPA Motion to Dismiss and set a separate hearing to determine attorney's fees and sanctions.

After considering the parties' arguments, the trial court denied Ireland's TCPA Motion to Dismiss, and this interlocutory appeal followed. *See id.* §§ 27.008(b), 51.014(a)(12). Specifically in its Order on Defendants' TCPA Motion, the trial court found that Appellees' claims were not based on or in response to Ireland's filing of the lawsuit and Lis Pendens. The trial court found that Appellees' breach of contract claim was based on Ireland's failure to take certain affirmative

12

actions that the Contract obligated it to take including furnishing title insurance, conveying the general warranty deed, and timely closing. The trial court found that Appellees established a prima facie case for each element of their breach of contract claim, noting that an email Ireland sent Appellees stating that it would not be able to go forward with the planned sale showed that Ireland anticipatorily breached the Contract, and the trial court also found that Ireland failed to establish an affirmative defense to its breach.

Regarding Appellees' fraudulent lien claim, the trial court noted that Appellees admitted their claim was based on Ireland's recording of the Lis Pendens, and the trial court found that Appellees established a prima facie case for each essential element of that claim. The trial court noted that Ireland could have avoided the title policy problem by obtaining the policy from one of the title companies that had recognized that Covenant's claim was invalid, and Ireland could have litigated its claim against Covenant without affecting the sale. The trial court was not persuaded that there is a privilege to file a fraudulent lis pendens.

## ANALYSIS

In issue one, Ireland argues the trial court erred by denying its TCPA Motion to Dismiss because its filing of the Transfer-Fee lawsuit and the Lis Pendens was an exercise of its right to petition. Ireland argues that Appellees' Original Petition was clearly based on or in response to its right to petition, and Appellees did not moot its

13

TCPA Motion to Dismiss by filing their amended petitions because they are still based on its filing of the lawsuit and Lis Pendens. Ireland argues that: (1) it met its burden to demonstrate that Appellees' breach of contract and fraudulent lien claims were based on or in response to its filing of a lawsuit and Lis Pendens, which each constitute an exercise of its right to petition; (2) Appellees failed to meet their burden to establish a prima facie case as to each element of their claims; and (3) it met its burden to establish its affirmative defense of the judicial proceedings privilege as a matter of law. In issue two, Ireland argues this Court should remand the case back to the trial court and instruct the trial court to award it attorney's fees, costs, other expenses, and sanctions in accordance with the TCPA.

We review the trial court's denial of a TCPA motion to dismiss de novo. *See Walker v. Hartman*, 516 S.W.3d 71, 79–80 (Tex. App.—Beaumont 2017, pet. denied); *see also Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018); *Smith v. Crestview NuV, LLC*, 565 S.W.3d 793, 796 (Tex. App.—Fort Worth 2018, pet. denied). "In conducting this review, we consider, in the light most favorable to the non-movant, the pleadings and any supporting and opposing affidavits stating the facts on which the claim or defense is based." *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied) (citations omitted); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a).

14

The TCPA "protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding) (citing Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011). The TCPA is a statutory mechanism that permits a party to move for dismissal of a "legal action" that is "based on or is in response to a party's exercise of the right of free speech, right to petition, or right of association[.]" *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a). Its purpose "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." *Id.* § 27.002. To effectuate the statute's purpose, "the Legislature has provided a [multi-step] procedure to expedite the dismissal of claims brought to intimidate or to silence a defendant's exercise of these First Amendment rights." *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (citations omitted); *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.003, 27.005. The multi-step procedure provides a burden-shifting framework. *See In re Lipsky*, 460 S.W.3d at 586–87.

Under the first step, the movant of the TCPA motion to dismiss has the burden to show by a preponderance of the evidence that the legal action is based on or is in response to the exercise of (1) the right of free speech, (2) the right to petition, or (3)

15

the right of association.[1] Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b); *see also Creative Oil & Gas, LLC v. Lona Hills Ranch*, *LLC*, 591 S.W.3d 127, 132 (Tex. 2019). The TCPA directs that it is to be "construed liberally to effectuate its purpose and intent fully." Tex. Civ. Prac. & Rem. Code Ann. § 27.011(b).

The statute defines the "[e]xercise of the right to petition" as, among other things, "a communication in or pertaining to . . . a judicial proceeding[.]" *Id.* § 27.001(4)(A)(i). Under the TCPA, a "'[c]ommunication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). As recognized by the Texas Supreme Court, the plain language of this definition extends the application of the TCPA to "[a]lmost every imaginable form of communication, in any medium[.]" *Adams*, 547 S.W.3d at 894. Assuming the movant meets his burden under step one to show by a preponderance of the evidence that the TCPA applies, then under step two the burden shifts to the nonmovant to establish by "clear and specific evidence a prima facie case for each essential element of the claim in question." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). A "prima facie case" refers to "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or

---

[1]It is undisputed that Appellant's lawsuit against Appellees is a "legal action," a term that the TCPA defines to include "a lawsuit, cause of action, petition . . . or any other judicial proceeding or filing that requests legal, declaratory, or equitable relief." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(6).

contradicted." *In re Lipsky*, 460 S.W.3d at 590 (citation omitted). It is the "'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004)). Clear and specific evidence means that the "plaintiff must provide enough detail to show the factual basis for its claim." *Id.* at 591. Even if plaintiff satisfies their burden in the second step, the court may still dismiss the action if the defendant "establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d).

### Applicability of the TCPA to Appellees' claims

Appellees did not dispute that their lawsuit is a "legal action" or that Ireland's filing of the lawsuit and Lis Pendens constitutes an exercise of its "right to petition." Instead, Appellees complained that Ireland failed to show their legal action is "based on" or "in response to" Ireland's right to petition because it is based on Ireland's breach of contract and failure to furnish title insurance and convey title. Appellees argued that the "right to petition" does not include Ireland's lawsuit to quiet title regarding a declaration, assessment, or other restrictive covenant that did not affect or impair title to the Property, because there was not a cloud on the title until Ireland filed the lawsuit and Lis Pendens. Appellees further argued that their legal action was based on or in response to the triggering of their own contractual

17

rights and remedies upon Ireland's default under the Contract by intentionally creating a "fictitious, non-waivable 'Schedule C' encumbrance" to escape its contractual obligations. Appellees claimed they were seeking specific performance and damages and were not seeking to prohibit Ireland's right to petition or otherwise dispute the transfer fee covenant. Appellees argued that Ireland could maintain its lawsuit against Covenant based on its standing as owner of another property that was subject to the transfer fee.

To determine the TCPA's applicability, the trial court shall consider the pleadings, evidence a court could consider under Rule 166a of the Texas Rules of Civil Procedure and supporting and opposing affidavits. *Id*. § 27.006(a); *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017); *see also* Tex. R. Civ. P. 166a. When the plaintiff's pleadings clearly show that the action is covered by the TCPA, the defendant need show no more. *Hersh*, 526 S.W.3d at 467. "When a legal action is in response to both expression protected by the TCPA and other unprotected activity, the legal action is subject to dismissal only to the extent that it is in response to the protected conduct, as opposed to be subject to dismissal in its entirety." *Walker*, 516 S.W.3d at 81 (citation omitted); *see also Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 459, 469 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (holding that TCPA motion to dismiss was not rendered moot by filing of amended petition).

Appellees' Original Petition alleged that to avoid its contractual obligation to close on the sale, Ireland breached the Contract by filing a lawsuit against Covenant to invalidate the Declaration of Covenant and Notice of Assessment and by recording a Lis Pendens. Appellees also alleged that Ireland filed a fraudulent claim against real property by recording the Lis Pendens with knowledge the document was a fraudulent claim and intending for the document to evidence a valid claim against real property and cause them financial injury. In their Second Amended Petition, the live pleading, Appellees allege that Ireland breached the Contract by failing to furnish title insurance as required by the Contract; execute and deliver a general warranty deed conveying title to the Property which showed no additional exceptions than those permitted in the Contract; and close on the sale. Appellees allege that Ireland filed the lawsuit and recorded the Lis Pendens with intent to cause them financial injury and based on those actions and the terms of the Contract, Ireland breached the Contract. Regarding their fraudulent lien claim, Appellees allege that Ireland presented the lawsuit and Lis Pendens to the title company with knowledge that the document or record is a fraudulent lien or claim against real property and with intent that the document or record be treated as a valid lien.

The allegations in Appellees' live pleading show their breach of contract and fraudulent lien claims were based on or in response to Ireland's filing of its lawsuit and Lis Pendens. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(4)(A)(i) (broadly

defining the "[e]xercise of the right to petition" to include "a communication in or pertaining to . . . a judicial proceeding"); *River Plantation Cmty. Improvement Ass'n v. River Plantation Props., LLC*, No. 09-17-00451-CV, 2018 WL 4120252, at *4 (Tex. App.—Beaumont 2018, no pet.) (mem. op) (citations omitted). In its Order on Defendants' TCPA Motion, the trial court noted that Appellees admitted their fraudulent lien claim was based on Ireland's recording of the Lis Pendens. The trial court concluded that Appellees' breach of contract claim was not based on or in response to Ireland's right to petition because they did not allege that Ireland breached the contract by filing the lawsuit and Lis Pendens but by failing to take actions required by the Contract. The Appellees' live pleadings do not support the trial court's conclusion. We conclude that Ireland met its burden to show Appellees' breach of contract and fraudulent lien claims were based on or in response to its filing of a lawsuit and Lis Pendens, which each constitute an exercise of its right to petition.

Prima Facie Case

Having concluded that Ireland made the initial showing required under the TCPA, the burden shifted to Appellees to establish by clear and specific evidence a prima facie case for each essential element of their claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *see also In re Lipsky*, 460 S.W.3d at 590–91 (requiring a plaintiff to "provide enough detail to show the factual basis for its claim"). "Prima

20

facie evidence" is that "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *In re Lipsky*, 460 S.W.3d at 590 (internal quotations omitted). A prima facie case may be established through circumstantial evidence. *See id.* at 591. However, conclusory statements are not probative evidence and will not suffice to establish a prima facie case. *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 355 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *see also In re Lipsky*, 460 S.W.3d at 592 (explaining that "[b]are, baseless opinions" are not "a sufficient substitute to the clear and specific evidence required to establish a prima facie case under the TCPA").

Breach of Contract Claim

To prevail on a breach of contract claim, a party must show: (1) a valid contract existed between the parties; (2) the plaintiff performed or offered to perform the contract; (3) the defendant breached the agreement; and (4) the plaintiff was damaged by the breach. *S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018); *see also Sullivan v. Smith*, 110 S.W.3d 545, 546 (Tex. App.—Beaumont 2003, no pet.). In their Original Petition, Appellees alleged that Ireland breached the Contract by filing a lawsuit and recording a Lis Pendens, and in their Response to Ireland's TCPA Motion to Dismiss, Appellees argued that Ireland filed a lawsuit and Lis Pendens to create a non-waivable Schedule C encumbrance and

defaulted by creating that Schedule C encumbrance notwithstanding its contractual obligations. In their Second Amended Petition, Appellees allege Ireland breached the Contract by failing to furnish title insurance as required by the Contract, execute and deliver a general warranty deed conveying title to the Property which showed no additional exceptions than those permitted in Paragraph 6 of the Contract as required by Paragraph 9, and timely close on the sale. During the hearing on Ireland's TCPA Motion to dismiss, Appellees argued that their amended petition clarified that their breach of contract claim was based on the presentation of the lawsuit and Lis Pendens to the title company to get out of the Contract.

In its Order on Defendants' TCPA Motion, the trial court noted that neither party directed the trial court to any provision in the Contract that obligates Ireland to refrain from filing a lawsuit or Lis Pendens. The trial court further noted that an email Ireland sent to one of the Appellees stating that it was not able to go forward with the sale showed Ireland anticipatorily breached the Contract. The evidence shows the email from John Quinlan of Ireland to Brent stating that a title matter had emerged related to the Property was part of a string of emails that was attached to Appellees' Response to Ireland's TCPA Motion to Dismiss, and during the hearing on Ireland's TCPA Motion to Dismiss, Appellees' counsel agreed that hearsay testimony was not admissible because the trial court could only consider evidence that would be admissible under Rule 166a.

22

In determining whether Appellees proved a prima facie case for each essential element of their claims, our focus is on the element of breach and whether Appellees presented clear and specific evidence that Ireland breached the contract. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *In re Lipsky*, 460 S.W.3d at 590–91. First, we note that any conclusory statements in Liu's affidavit are not probative evidence and will not suffice to establish a prima facie case. *See Better Bus. Bureau of Metro. Hous., Inc.*, 441 S.W.3d at 355; *see also In re Lipsky*, 460 S.W.3d at 592. Secondly, Liu's statement in her affidavit that other title companies were willing to underwrite a policy without taking exception to the transfer fee is not evidence that Ireland breached the Contract, because the Contract specifically provides that Ireland shall furnish Appellees a title policy issued by Riverway Title insuring loss under the provision of the title policy subject to the promulgated exclusions and nine specified exceptions, which are not subject to objection or waiver.

The Contract states that Buyer "may object in writing to defects, exceptions, or encumbrances to title disclosed in the Commitment other than items listed in 6A(1) through (9)[,]" and if Seller fails to cure objections, Buyer may terminate the Contract or waive the objections. The Contract provides that if the Commitment is revised, Buyer may object to any new exceptions. The Contract further provides that closing will be on or before March 25, 2022, or within seven days after objections to matters disclosed in the Commitment have been cured, whichever date is later.

The Contract did not forbid new title exceptions; instead, it gave Appellees the right to object to exceptions that appeared on the Commitment other than those listed in 6A(1) through (9), and if Ireland failed to cure, Appellees could terminate the Contract or waive the objections. The Contract states that the failure to timely object constitutes a waiver of the right to object, except for the requirements in Schedule C.

The Schedule C requirements in the March 24 Commitment included the Notice of Lis Pendens, Ireland's lawsuit against Covenant, and the payment of any transfer fees. The March 24 Commitment specifically stated that the policy will not cover loss, cost, or attorney's fees resulting from the Lis Pendens or lawsuit, unless the Lis Pendens is released and the lawsuit is satisfactorily disposed of before the date the Policy is issued. The March 24 Commitment of Title states the following:

> Before issuing a Commitment for Title Insurance . . . , the Title Insurance Company (the Company) determines whether the title is insurable. This determination has already been made. Part of that determination involves the Company's decision to insure the title except for certain risks that will not be covered by the Policy. Some of these risks are listed in Schedule B of the attached Commitment as Exceptions. Other risks are stated in the Policy as Exclusions. These risks will not be covered by the Policy. . . .
>
> Another part of the determination involves whether the promise to insure is conditioned upon certain requirements being met. Schedule C of the Commitment lists these requirements that must be satisfied or the Company will refuse to cover them. You may want to discuss any matters shown in Schedules B and C of the Commitment with an attorney. These matters will affect your title and your use of the land.

24

When your Policy is issued, the coverage will be limited by the Policy's Exceptions, Exclusions and Conditions, defined below.

**EXCEPTIONS** are title risks that a Policy generally covers but does not cover in a particular instance. Exceptions are shown on Schedule B or discussed in Schedule C of the Commitment. They can also be added if you do not comply with the Conditions section of the Commitment. When the Policy is issued, all Exceptions will be on Schedule B of the Policy.

**EXCLUSIONS** are title risks that a Policy generally does not cover. Exclusions are contained in the Policy but not shown or discussed in the Commitment.

. . .

In her affidavit, Liu averred that after the title company issued the March 24 Commitment, which included the Schedule C requirement for the "satisfactory disposition" of the lawsuit and Lis Pendens, she and Brent "objected and demanded that Ireland comply with the requirements of Schedule C[,]" but Ireland refused and objected to the Lis Pendens and settlement statement. Liu further averred that she and Brent requested that Ireland release the Property from the lawsuit and Lis Pendens so that the Schedule C items would be cleared, and the sale of the Property could proceed, and Ireland refused. Liu stated that she and Brent signed all closing documents and tendered payment to the title company, but she understood that Ireland signed some closing documents and objected to the Lis Pendens and settlement statement.

25

The Contract did not require Ireland to cure Appellees' objection and request to satisfactorily dispose of the lawsuit and Lis Pendens. Based on the language of the Contract, after Ireland refused to cure, Appellees could terminate the contract or waive their objections and accept the March 24 Commitment which determined that the title was insurable but excluded coverage for any loss, cost, or attorney's fees resulting from the Lis Pendens or lawsuit. The evidence shows Ireland provided Appellees a policy of title insurance issued by Riverway Title that complied with the Contract. Appellees presented no evidence showing they had waived the Schedule C requirements regarding the lawsuit and Lis Pendens and were willing to accept the title policy Ireland provided, which would have allowed Ireland to deliver a general warranty deed conveying title and close on the Property. We conclude Appellees presented no evidence of breach. Accordingly, Appellees failed to meet their burden to adduce clear and specific evidence to support each element of their breach of contract claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *see also S & S Emergency*, 564 S.W.3d at 847; *Sullivan*, 110 S.W.3d at 546.

Fraudulent Lien Claim

Appellees filed a fraudulent lien claim against Ireland under section 12.002 of the Texas Civil Practice and Remedies Code for filing an invalid notice of Lis Pendens. *See id*. § 12.002. Section 12.002 states:

(a) A person may not make, present, or use a document or other record with:

26

(1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

(2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity . . . , evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

(3) intent to cause another person to suffer:

    (A) physical injury;

    (B) financial injury; or

    (C) mental anguish or emotional distress.

*Id.* § 12.002(a). To prevail on their fraudulent lien claim, Appellees must show that Ireland made, presented, or used a document or other record with knowledge that the document or other record is a fraudulent court record or fraudulent lien or claim against real property. *See id.*

Appellees' Second Amended Petition alleges that Ireland violated section 12.002 by presenting a copy of the lawsuit and Lis Pendens to the title company with knowledge that the document or record is a fraudulent court record or a fraudulent lien or claim against the Property. Appellees further alleged that Ireland intended for the document or record to be given the same legal effect as a valid lien or claim against the Property and to cause Appellees financial injury. Appellees asserted in

27

their live pleadings and their Response to Ireland's Motion to Dismiss that Ireland presented a copy of the lawsuit and Lis Pendens to the title company with knowledge that the documents or records were a fraudulent lien or claim against real property, but there is no evidence supporting their assertions, and conclusory statements will not suffice to establish a prima facie case. *See Better Bus. Bureau of Metro. Hous., Inc.*, 441 S.W.3d at 355; *see also In re Lipsky*, 460 S.W.3d at 592.

The evidence shows that the Lis Pendens provided notice of the pendency of Ireland's lawsuit against Covenant, which sought a declaratory judgment confirming that the Declaration, Notice of Transfer Fee, Notice of Private Transfer Fee, and Notice of Assessment are void, voidable, illegal or unenforceable as to Ireland's properties that were once part of the Montgomery County Property.

There is no evidence showing that Ireland or its lawyers believed that lawsuit and Lis Pendens were fraudulent. In her affidavit Liu explained that the title work uncovered that Covenant had filed a Notice of Assessment in 2021 claiming that the Property may be subject to a transfer fee upon the sale. Since Appellees failed to adduce any evidence that showed Ireland knew that the lawsuit and Lis Pendens were fraudulent, we conclude Appellees failed to adduce clear and specific evidence to support each element of their fraudulent lien claim. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 12.002(a)(1), 27.005(c); *James v. Calkins*, 446 S.W.3d 135, 150 (Tex.

App.—Houston [1st Dist.] 2014, pet. denied), *abrogated on other grounds by Montelongo v. Abrea*, 622 S.W.3d 209 (Tex. 2021).

## Conclusion

Ireland established that it was entitled to a ruling dismissing Appellees' breach of contract and fraudulent lien claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005. We sustain issues one and two. We reverse the trial court's Order on Defendants' TCPA Motion, remand the case to the trial court so that it can enter a judgment dismissing Appellees' breach of contract and fraudulent lien claims, and instruct the trial court to award Ireland reasonable attorney's fees, costs, and other expenses incurred as allowed under the TCPA. *See id.* §§ 27.005, 27.009(a); *River Plantation Cmty. Improvement Ass'n*, 2018 WL 4120252 at *7.

REVERSED AND REMANDED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on February 23, 2023
Opinion Delivered March 16, 2023

Before Golemon, C.J., Horton and Wright, JJ.

29